ready to proceed with the first case, 21-2757CV, Integrity Social Work Services versus Javier Becerra et al. And I understand for the appellant, we have Mr. Tram, is that correct? Good morning, Your Honor. Good morning. And you would like to reserve two minutes for rebuttal, is that right? That's correct, Your Honor. Very good. You may proceed. Good morning, Your Honor. My name is Michael Tram, counsel for Plaintiff Appellant, Integrity Social Work Services. In this appeal, Integrity requests that the court reverse the trial court's dismissal of Integrity's complaint. In particular, the trial court erred in issuing two holdings. First, the trial court erred in holding that it lacked subject matter jurisdiction over Integrity's unlawful delegation of authority claims because those claims, according to the trial court, had to be exhausted through the administrative process. Second, the trial court erred in determining that Integrity's complaint failed to state cause of action for violation of procedural and substantive due process. Regarding the lack of subject matter jurisdiction issue, the trial court determined that Integrity's claims that the Department of Health and Human Services unlawfully delegated its because those claims arose under the Medicare Act and therefore had to be exhausted before Integrity could seek judicial review. The trial court's determination was erroneous because, first, Integrity's unlawful delegation claims are not inextricably intertwined with its claims for the administrative process. In fact, can I ask you, what is the latest status on that administrative process? Yes, Your Honor. There is an administrative hearing scheduled for June 16th and 17th. Okay, thank you. So, the unlawful delegation claims are not inextricably intertwined with Integrity's benefits. Those claims do not challenge the... Sorry. So, the unlawful delegation claims are not challenging whether the benefits are right or wrong, and it's not claiming that Integrity's entitled to those benefits. Rather, Integrity is seeking judicial determination of how much process it is due before a private contractor can deprive it of those benefits. So, if you are adverse to your client with respect to money, then presumably, the upshot is that you win. You win on a Medicare claim, right? And that is unacceptable. You're dealing with the money. What else are you thinking about? What else are you looking for? No, Your Honor. I would disagree with that because, although we are challenging the authority of the private contractor, just because a trial court determines that the delegation was unlawful doesn't mean that Integrity automatically wins on its substantive Medicare claims. All it does is ask the department to reconsider its process, and that determination that Integrity is not entitled to those benefits would still be appropriate regardless of how it's done. Sorry, let me try to clarify that. What I'm trying to say, Your Honor, is that even if a court determines that the delegation was unlawful, it's not entitled to those benefits. So, what's the injury to your client if they get the benefits that they want? So, there are two issues. One was the temporary suspension of the Medicare payments, and second is the recoupment without an adequate hearing, without being provided with a hearing. So, Integrity has been injured from the loss of business related to the temporary suspension as well as... When you say the loss of business, do you mean the fact that Medicare is not paying them the benefits? Yes. So, isn't that a claim for the benefits? Well, it's essentially a claim that is unrelated to the claims that were submitted and that would be reviewed during the administrative law hearing, because the temporary suspension is a determination and action by a private contractor that cannot be reviewed during the appeals process. Well, there's the initial sampling and the review, and then isn't there a second level of review by another independent contractor? Yes, Your Honor. And you have an opportunity to participate with regard to that review or not? Not with respect to the temporary suspension. No, with regard to the assertion that your billing methods were in compliance with Medicare regulations, or that... Because the audit revealed that the services being provided weren't being provided by an approved individual, right? It was like a psychiatric nurse as opposed to being billed at a different rate. Wasn't that the problem? Yes, Your Honor. And so, so there was an opportunity to examine as to whether that determination was correct, either factually and or in terms of the regulations at the second level, wasn't there? Yes, Your Honor. Okay. And so, so you did have some opportunity within a relatively short period of time after the initial sampling and then the larger, more random sampling to contest both the methodology and the conclusions that were rendered from it with regard to whether you were, whether you were following the appropriate Medicare guidelines with regard to providing the in-home psychiatric counseling that you were doing, correct? Yes, Your Honor. Okay. So there was at least some initial review. Your claim is that you're denied due process because they started recouping benefits after they made an assessment of the overpayment, and you never had a chance to contest it, but indeed you did at that second level, correct? We didn't get a chance to contest it with the department itself. Well, that's not what I asked you. That's not what I asked you. I understand your substitute due process claim because you're concerned about these are independent contractors, but you were given an opportunity, you had an opportunity built into the system to contest it at, with an independent contractor at a second step, correct? Yes, Your Honor. And then you had, then you were at a crossroads. You had a choice. You could either go to the administrative law judge, which was de novo review, correct? Yes, Your Honor. And an alternate appeal to the Medicare council, whatever that is, national level, or go directly to federal court, right? Skip the last two steps and go directly to federal court, correct? Through another process, there was the ability to go to, to seek judicial review, Your Honor. Okay. All right. But you chose to go to the administrative review, correct? That's what's happening in June, right? Yes, Your Honor. Okay. Very good. Thank you. Unless there are any other questions right now from the panel, why don't we hear from your adversary? And you have reserved two minutes for rebuttal, okay? Thank you, Your Honor. Thank you. So we will now hear from the appellee, Mr. Fan. Good morning. May it please the Court, Dennis Fan on behalf of the United States. I just wanted to pick up with the question that Judge Jacobs asked about whether this case really is just about Medicare payments. If you look at page 15 of the record, that's where plaintiff has their prayer for relief. They say it pretty straightforwardly. This is about the temporary suspension of the Medicare recruitment process that has been going on through the administrative review process and the reinstatement of Medicare payments until integrity social work is provided with the hearing. In that respect, this case is no different than the millions and millions of other cases that go through the administrative review process. Medicare processes over a billion claims a year. Those total up to over $700 billion a year, and everyone is expected to go through the four layers of administrative review before they come to court. What's the time period between the initial suspension of the benefits and the second step in the review process? So there are, between the four steps I'm aware of that. That's why I asked you about the time period between the suspension of the benefits and the second step. Before the ALJ hearing, there used to be quite a long backlog. In fact, how old is this one? This is three years old. It's a long time for a business which 85 percent of their business is Medicare patients to have their payments suspended, isn't it? A few responses to that, and there's a few factual things that aren't quite correct about that. Plaintiffs below did concede that it was only 50 percent of their business. Well, let me give you hypothetical then. You have a medical services provider that 85 percent of their clientele is Medicare eligible. Two of the members of this panel are on Medicare. As are many millions of Americans. I'm too young to be clear. A condition that will be corrected eventually, I might add. Hopefully, hopefully. Yeah, and so when the administrative delay is three years, that seems a little excessive, doesn't it? Before you get before an ALJ for a de novo review. Yeah, so the administrative delay, the backlog has been decreasing over the years. Congress has funded ALJs to decrease that backlog, and now it is under three years. It used to be up to 10 years, which that would be quite a long time. But just three responses really quickly. I'll give you an example. There are two nursing homes in Western New York that have had to close because their payments have been stopped because of an audit, and because the administrative process has taken so long, they've had to close. Congress has set forth a number of safety valves. One of the safety valves is what Your Honor mentioned, that if there really is a need for judicial review, you can escalate through the ALJ. If you're not happy with the delay, you can go to the Medicare Appeals Council. If you're not happy with the delay there, you can go directly to district court. Is that the 90-day intervals? Those are the 90-day intervals and the 90-day waiting period. So that's one safety valve. Is that realistically available? That is realistically available, Your Honor. So why would people wait two years if they only have to wait 90 days? I think folks often think that they have a better shot before an ALJ because they might be more familiar with Medicare issues than going to district court, where it might seem to them to be more unfavorable. Isn't there also a different standard of review? I thought if you go to the district court, there's more deference to the agency, but if you go to the ALJ, it's de novo, right? So you actually, I understand you're saying, well, maybe they might think they have a better shot, but in terms of the standard of review, they do have a better shot, right? It is a constitutionally permissible standard of review, obviously, but there are... Right, but they are not choosing between two forums in which the odds of success are equally weighted, right? That's right. And I'll say there, I'm not saying that this is, that alone is a perfect safety valve for all cases, but there are multiple other safety valves that Congress has built into this structure. You still get to receive ongoing Medicare payments, integrity, social work, plaintiff here, gets to keep billing Medicare throughout this entire process. So they might have messed up in one respect in 2018, 2022, they can keep billing Medicare. 2023, they can keep billing Medicare. That can keep happening until Medicare decides for some other reason to terminate them from the system or to disenroll them. Is that in the record of this case, whether or not integrity is continuing to bill and get paid, or is that not in the record? I'm not sure it's in the record specifically, but there would be, Medicare would send you a notice that says you are being terminated from Medicare and you'd of course be able to challenge that as well. That's a separate sort of determination. Can I ask you a somewhat different question? In your view, if you were to win, just to understand your position, do you think that analytically we have to first reach the jurisdictional question, the statutory, I suppose, subject matter jurisdiction question of exhaustion, or would it analytically be possible to skip to the merits of the constitutional claim? I think you can skip to the merits. And there's the specific reason why is the statutory review criteria come from 405G and 405H of the Social Security Act. And those, the Supreme Court has said, have two requirements. One of them is jurisdictional, which is that you need to present your claim to the government. Was the constitutional claim presented to the government? At least the administrative claim was presented. The administrative claim, the oversight, and the constitutionally due process. Was that presented? If it wasn't, it's not here. I'm not sure. That's a great question, Your Honor, and I honestly am not. I haven't, I'll be very frank, I haven't actually looked at what exactly they said to the contractors that they said you're without authority. It's a jurisdictional problem. But I believe the requirement is you need to at least present your claim for payment to the administrative contractor. For sure. But I mean, the question is whether you have to present the constitutional claim, because if you're required to present the constitutional claim, as I think you are, then it could be that the agency can dispose of the dispute on various other grounds, and it never has to rise to being the constitutional claim presented here. Yeah, and I think there would be different, you know, a sort of waiver of arguments and forfeiture of arguments occurs within the administrative system, just as it does in the judicial system. So if they hadn't brought any sort of constitutional objection along with their claim of payment, then I'm sure an ALJ would say, or later in the administrative system, you might say, look, you haven't preserved that argument. But I'm not sure that's necessarily a presentment problem of them having failed to present their claim for reimbursement. In this particular subject matter jurisdiction question that we're looking at with exhaustion, that statutory subject matter jurisdiction, would you agree, and not Article III, subject matter jurisdiction? The first requirement, the Supreme Court has said, presentment is truly jurisdictional. The second requirement... But jurisdiction in what sense? Statutory or constitutional, like Article III or subject matter jurisdiction? I think it would be, yeah, statutory jurisdiction. Statutory. And I only say that because it's my understanding that we're not, well, there's some debate about whether we're ever allowed to assume Article III subject matter jurisdiction or standing, but that we are permitted to assume subject matter jurisdiction, particularly when the district court here concluded that at least, I think it was the procedural due process question was subject to waiver of the exhaustion rule. And so this entire case relates to that second requirement, which is completely waivable, which doesn't go to jurisdiction at all in the sort of, quote unquote, jurisdictional sense. But I do want to mention along the lines of exhaustion, why exhaustion here is so important. And there's at least three reasons. Most of what plaintiff's challenge is, of plaintiff's challenge really is that the secretary has been using completely unsupervised contractors. And there's three reasons why that in particular is a type of claim that should go through the Medicare process. If you're unhappy... You've got 20 seconds to crank through those three reasons. If you're unhappy with Medicare contractors and how they're supervised, well, going through the what contractors are doing, it's especially critical that the secretary becomes aware of them. And I see I'm over my time, but if I have one more sentence... Finish your thought. The last one is, if there really are problems with contractors as well, it's equally important that we build a record of what has been going wrong through the contractor system to further enable the sort of judicial review that the statutory scheme contemplates that happens at the end of the administrative process. So with that, we urge this court to occur. Okay. Thank you very much. Thank you. Mr. Tram, you have reserved two minutes for rebuttal. Let's hear from you. Thank you, your honors. First, I would like to address the constitutional issues and jurisdiction. It's well settled that administrative agencies aren't competent to push the unlawful delegation issue through the administrative process. We would first be asking a private contractor to determine whether what it's doing is unconstitutional. If they will want to keep their jobs, then they will probably say, yes, everything we're doing is constitutional. Then they escalate to the second level, another private contractor. And if we say, ask them to find out what they're doing is unconstitutional, it's unclear if they would, if they want to keep their jobs. So, constitutional issues should not be required to be exhausted in this sense. And I just want to touch on a separate issue regarding the time frame for an AOJ hearing. From my experience, it's been an average of five years between the second and third levels of Medicare appeals. And this case was only three years, which I might say is a little expedited compared to the rest of the cases that counsels actually take up to 10 years. And the only difference is that we filed a lawsuit in federal court. And it's absurd that a Medicare provider has to file a federal lawsuit just to get an AOJ hearing within three years. So with that, Your Honors, I respectfully request that you reverse the trial court's dismissal. Thank you. Thanks very much to both of you. We appreciate your very helpful arguments, and we will take the case under advisement.